## FRANKLIN NICKERSON *vs.* CHARLES S. DARROW.

Possession of the property of another with his consent, and with the apparent ownership, gives no authority to pledge it, if it was not left with the possessor for the purpose of sale, and such apparent ownership has not been permitted by the real owner with a fraudulent intent.

If an agent, who is in possession of goods without authority to sell them, pledges the same, a subsequent authority to sell them, given to him without knowledge of the pledge, will not make the title of the pledgee valid.

REPLEVIN of fifty seven tierces of lard.

At the trial in the superior court, before *Brigham,* J., it appeared that the plaintiff, who resided in Nantucket, employed Cushman, Spence & Co., who were known to him as commission merchants in Boston, to purchase eighty tierces of lard for him in Chicago. They purchased the lard, which was sent to them by railroad, and arrived in two separate lots, and was stored by them in Boston, in the public warehouse of Hills & Brother, who issued warehouse receipts for it. The defendant offered evidence tending to show that when the lard arrived, Cushman informed Hills that it was the property of his firm, and they intended to hold it for a rise, and would probably wish to get an advance upon it; and on the next day Spence requested Hills to get an advance upon it, giving to him the invoice from the seller of the lard, and the warehouse receipts, indorsed by Cushman, Spence & Co. In pursuance of this request, Hills procured from the defendant an advance of $1333, on the 11th of May 1861, and delivered to him the warehouse receipts. It was agreed that the advance was made by the defendant in good faith, and without any reason on his part to believe that the lard was not the property of Cushman, Spence & Co.

There was conflicting evidence as to whether the plaintiff gave to Cushman, Spence & Co. authority to sell the lard, at the time when he employed them to make the purchase. On the 14th of May, they sent to him a letter as follows : " Please find above a receipt for eighty tc's lard. When the balance arrives, will send you receipt; also B. L., which we have of thirty barrels more, expecting every day draft paid." The receipt referred to was as follows: " 80 tc's lard. Boston, May 14, 1861. Received and stored eighty tc's prime leaf lard, for Franklin Nickerson, to be sold for his account and risk, and under his instructions." On the 4th of June, they sent to him another letter, enclosing a similar receipt for thirty barrels of lard. The Plaintiff did not object to the terms of these receipts, or forbid the sale of the lard; but testified at the trial that he sup posed they were warehouse receipts. On the 25th of July he learned of the pledge to the defendant, and commenced the present action.

The defendant's counsel argued to the jury, and requested the court to instruct them that " the plaintiff, having accepted the two receipts in question from Cushman, Spence & Co. without making any objection to the same, or forbidding or objecting to their selling the lard, allowed them to be intrusted with the possession of the lard for the purpose of sale, and that he could not show any different state of things, because he did not understand the force and effect of the two receipts;" but the judge declined so to rule.

The defendant also requested the court to instruct the jury that, if the plaintiff intrusted in the hands of Cushman, Spence & Co. the lard in question, as his agents, and if the understanding and agreement between the plaintiff and Cushman, Spence & Co. was, that they should at some future time sell the lard on his account and risk, although no time was fixed for the sale, or terms, and if the defendant in good faith advanced money to Cushman, Spence & Co., believing them to be the owners, and with probable and reasonable cause to believe that the lard belonged to Cushman, Spence & Co., then the defendant can hold the lard for the amount of his advances; and that if the plaintiff,

knowing that the said Cushman, Spence & Co. were commission merchants, whose ordinary and usual business was to sell property like this in question, employed them as his agents to buy, receive and take charge of the lard in question, and if he, by his acts and conduct, negligently allowed and consented that Cushman, Spence & Co. should be held out to the public as the true owners of the lard, and allowed the title to the property to be held in their name, and also negligently allowed the ordinary and usual *indicia,* documents and muniments of title to be in the name of Cushman, Spence & Co., and if the said defendant was misled by the negligence of the plaintiff, and was deceived by the said plaintiff's agent, and in good faith advanced money on the goods, believing and having reasonable cause to believe that the goods were the property of Cushman, Spence & Co., then the defendant is not to suffer from the fact that the plaintiff's agent exceeded his authority, but can hold the lard for the amount of his advances.

The judge declined so to instruct the jury, but instructed them that "if the plaintiff, for the fraudulent purpose of enabling Cushman, Spence & Co. to obtain a false credit, or to hold themselves out to and deal with innocent persons as the owners of said property, gave them the possession of the property, and other ordinary and usual *indicia* of ownership, he cannot recover his property of any *bona fide* purchaser, or one who has been imposed on by the appearance of ownership furnished by the plaintiff to Cushman, Spence & Co. A jury would be authorized to infer such a fraudulent purpose in the plaintiff, if, without evidence of any express or positive fraudulent intent, it was proved that he gave such possession, and furnished to and permitted Cushman, Spence & Co., to have all the ordinary *indicia* of ownership, upon the ground that every one is presumed to intend the usual and ordinary consequences of his act. If Cushman, Spence & Co. were intrusted by the plaintiff with the possession of this lard for the purpose of sale, any *bona fide* contract made by Cushman, Spence & Co. in relation to this property would be valid, and it would be immaterial when or on what terms, limitations or conditions, such sale was to be

made; the material fact to be ascertained being that the prop
erty was put into the possession of Cushman, Spence & Co.
for the purpose of sale."

The jury returned a verdict for the plaintiff, and the defend-
ant alleged exceptions.

*G. A. Somerby*, for the defendant.

*G. O. Shattuck*, for the plaintiff, was not called upon.

HOAR, J.   The instructions given to the jury were sufficiently
favorable to the defendant, and included all the rulings which
he could properly ask.

The jury were expressly instructed that " if Cushman, Spence
& Co. were intrusted by the plaintiff with the possession of the
lard for the purpose of sale, any *bona fide* contract made by
Cushman, Spence & Co. in relation to this property would be
valid, and it would be immaterial when or on what terms, lim-
itations or conditions, such sale was to be made; the material
fact to be ascertained being that the property was put into the
possession of Cushman, Spence & Co. for the purpose of sale."
This covered all the ground of the defendant's claim, as to the
effect of a delivery to Cushman, Spence & Co. for the purpose
of sale; and was in conformity with the provisions of Gen. Sts.
*c.* 54, § 4.   The defendant was permitted to introduce all perti-
nent evidence bearing upon this point, including the letters and
receipts in which the lard was said to have been consigned for
sale; and to argue it fully to the jury.   Whatever force the let-
ters and receipts had, as implying, by their reception without
dissent, that the plaintiff admitted that the lard had been origi-
nally consigned for the purpose of sale, the defendant had the
benefit of it before the jury.

But the defendant went farther, and claimed that receiving
these receipts, without objection, bound the plaintiff by the
statements contained in them, and estopped him from denying
that the lard was consigned for the purpose of sale.   But the
difficulty with this proposition is, that the lard was pledged to
the defendant before the letters and receipts were written; and
therefore the defendant did not alter his condition. in conse-
quence of them: and they could not create an estoppel *in pais*

against him. If they were an admission, the defendant knew nothing of it, and had not acted upon it; and so the plaintiff might show that the admission was erroneous or mistaken.

The instruction given, that if the plaintiff fraudulently permitted Cushman, Spence & Co. to have the possession and apparent ownership of the property, he could not recover it from any *bona fide* purchaser, or one imposed upon by the appearance of ownership fraudulently created, was sufficient for the defendant's purpose, so far as the acts of the plaintiff prior to the accruing of the defendant's title were in controversy.

When the presiding judge farther ruled, that " a jury would be authorized to infer such a fraudulent purpose in the plaintiff, if, without evidence of any express or positive fraudulent intent, it was proved that he gave such possession, and furnished to and permitted Cushman, Spence & Co. to have all the ordinary *indicia* of ownership, upon the ground that every one is presumed to intend the usual and ordinary consequences of his act," he stated a doctrine favorable to the defendant, the correctness of which it might be our duty seriously to consider, if the verdict had not made it unimportant in this case. We certainly do not now intend to sanction it.

*Exceptions overruled.*